IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Nos. 1:19-bk-04714-HWV |
| FOX SUBACUTE AT | : | 1:19-bk-04716-HWV |
| MECHANICSBURG, LLC, FOX | : | 1:19-bk-04717-HWV |
| SUBACUTE AT CLARA BURKE, | : | 1:19-bk-04715-HWV |
| INC., FOX SUBACUTE AT SOUTH | : | |
| PHILADELPHIA, LLC, and FOX | : | Chapter 11 |
| SUBACUTE AT WARRINGTON | : | |
| | : | Jointly Administered |
| | : | |

**JOINT PLAN OF REORGANIZATION OF FOX SUBACUTE
AT MECHANICSBURG, LLC, AND FOX SUBACUTE AT SOUTH
PHILADELPHIA, LLC**

Fox Subacute at Mechanicsburg, LLC ("Mechanicsburg"), and Fox Subacute at South Philadelphia, LLC ("South Philadelphia") (individually a "Debtor" and collectively the "Debtors" or "Fox Subacute") propose the following Plan of Reorganization (the "Plan") with respect to their Chapter 11 cases:

**ARTICLE I
DEFINITIONS**

Set forth below are various terms which shall, except where the context otherwise requires, have the respective meanings listed herein. All of the following meanings shall be applicable to the singular and plural forms of the following defined terms:

1.1     Accounts Receivable shall mean sums owed to a Debtor for charges on account of a Debtor providing services, or rents owed to a Debtor.

1.2     AC HSS Office Ventures II, LLC or AC HSS shall mean the current landlord of the South Philadelphia Facility.

**1.3**     Administrative Claim shall mean an administrative expense from and after November 1, 2019, the date on which the Debtors' Chapter 11 Cases commenced, which is entitled to priority in accordance with Section 507(a)(1) of the Code and allowed under Section 503 of the Code.

**1.4**     Administrative Professional Claim shall mean compensation and reimbursement of professionals, including attorneys, accountants, experts, consultants and realtors as allowed by the Court under Section 330 of the Code.

**1.5**     Allowed Claim shall mean a Claim which is scheduled pursuant to the Code, or stipulated of record in this Chapter 11 Case, other than a Claim scheduled as disputed, contingent or unliquidated, or which is identified in a Court approved Stipulation filed of record in this Chapter 11 Case, or which has been filed pursuant to Section 502(a) of the Code, and with respect to which no objection to the allowance thereof has been interposed within the time allowed by the Court or Bankruptcy Code, or as to which any objection has been overruled (and to the extent so overruled) by a Final Order. An Allowed Claim shall not include any interest accruing on a Claim except as specifically authorized by the Plan.

**1.6**     Assets shall mean all of the Debtors' Personal Property.

**1.7**     Cash shall mean cash and cash equivalents.

**1.8**     Cash Collateral Motion shall mean that Motion filed by the Debtors on November 1, 2019.

2

**1.9** Cash Collateral Order shall mean the Order initially entered by the Bankruptcy Court on November 8, 2019, and all continuing Orders thereon as entered by the Court.

**1.10** Chapter 11 Case shall mean each of the Mechanicsburg and South Philadelphia proceedings commenced by voluntary petitions under Chapter 11 of the Code at Case Nos. 1:19-bk-04714 and 1:19-bk-04717 respectively, in the United States Bankruptcy Court for the Middle District of Pennsylvania.

**1.11** Claim shall have the meaning as provided by Section 101(4) of the Code.

**1.12** Clara Burke shall mean Fox Subacute at Clara Burke, an affiliate of the Debtors which operates a skilled nursing facility in Montgomery County, Pennsylvania.

**1.13** Code or Bankruptcy Code shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. Sections 101, et seq., commonly referred to as the Bankruptcy Code.

**1.14** Contingent Claim shall mean any Claim for which the Debtors is not directly liable, is listed as contingent on the Schedules, and has not been determined otherwise by a Final Order.

**1.15** Court or Bankruptcy Court shall mean the United States Bankruptcy Court for the Middle District of Pennsylvania in which Court the Debtors' Chapter 11 case is pending.

**1.16** Debtor shall mean either Mechanicsburg or South Philadelphia.

**1.17** Debtors shall mean more than one of each such Debtor.

**1.18** Disbursing Agent shall mean Robert E. Chernicoff, Esquire, of Cunningham, Chernicoff & Warshawsky, P.C., or any substitute person as such law firm shall designate.

Case 1:19-bk-04714-HWV    Doc 764    Filed 08/19/22    Entered 08/19/22 15:52:07    Desc
Main Document    Page 3 of 36

**1.19**     Disputed Claim shall mean any Claim which is listed as disputed on the Schedules, or to which an objection to the allowance thereof has been interposed, and has not been determined otherwise by a Final Order.

**1.20**     Distribution Date shall mean the day on which distribution to Class 5 Claim holders will be paid.  Such Distribution Date shall be determined by the Disbursing Agent based upon whether or not a large number of Claims are being challenged so as to make distribution unfeasible or whether there are insufficient funds on hand to make a distribution for various reasons, including, but not limited to, the fact that a liquidation or collection of a sufficient amount of the Assets has not occurred.  The Distribution Date may also be extended based upon a determination by the Disbursing Agent that liquidation of any remaining assets or payment from the Debtors into any fund to be used for distribution to Class 5 Claim holders is imminent such as to warrant a delay.

**1.21**     Effective Date shall mean the Effective Date of the Plan which date shall be the first day of the month following sixty (60) days after the Confirmation Date becomes final, and shall not have been reversed, stayed, or adversely modified or amended.  The Effective Date is as further set forth in Section 15.2 of  the Plan and such date is subject to the right of the Debtors to request that the Court extend the Effective Date, including allowing sufficient time for the standard termination of the Pension Plan (as defined below).

**1.22**     Facility shall mean one of the skilled nursing facilities operated by one of the Debtors.

**1.23**     Facilities shall mean both of the Facilities operated by the two (2) Debtors.

**1.24** Final Order shall mean an Order of the Bankruptcy Court which has not been reversed or stayed and to which:

> **a.** The time to appeal or seek review, rehearing or certiorari has expired and no timely appeal has been filed, or

> **b.** Any appeal has been finally resolved.

**1.25** Fox Subacute at Mechanicsburg or Mechanicsburg shall mean Fox Subacute at Mechanicsburg, LLC, a Debtor in the above Chapter 11 cases.

**1.26** Fox Subacute at Clara Burke or Clara Burke shall mean Fox Subacute at Clara Burke, Inc., a Debtor in the above Chapter 11 cases.

**1.27** Fox Subacute at South Philadelphia or South Philadelphia shall mean Fox Subacute at South Philadelphia, LLC, a Debtor in the above Chapter 11 cases.

**1.28** Fox Nursing Home Corp. or Fox Subacute at Warrington or Warrington shall mean Fox Nursing Home Corp. d/b/a Fox Subacute at Warrington, a Debtor in the above Chapter 11 cases.

**1.29** Fox Subacute or Management shall mean Fox Subacute Management, Inc., an affiliate of each of the Debtors, which entity provides management services to each Debtor.

**1.30** FSA Realty Associates or FSA shall mean FSA Realty Associates, LLP an affiliate of the Debtors, and the landlord of the Mechanicsburg Facility.

**1.31** Intercreditor Agreement shall mean that certain Intercreditor Agreement entered into as of April 20, 2018, by and among PeoplesBank, Sabra Health Care, Clara Burke and Warrington with respect to certain lien priorities and rights by and among the parties to such Agreement.

**1.32**   James M. Foulke shall mean an individual who is the majority owner of each Debtor.

**1.33**   Joseph F. Murray shall mean an individual who is the general, in-house counsel of the Debtors and is a minority owner of the Debtors.

**1.34**   PeoplesBank shall mean PeoplesBank, A Codorus Valley Company, a banking institution which institution is a secured creditor of the Debtors.

**1.35**   Personal Injury Suits or PI Suits shall mean any litigation brought against any of the Debtors for professional liability or malpractice, or any claims for premises liability or similar lawsuits.

**1.36**   Personal Property shall mean each Debtors' present and future accounts receivable, chattel paper, securities, partnership interests, motor vehicles, documents, equipment, furniture, general intangibles, inventory, and all products and proceeds thereof.

**1.37**   Petition Date shall mean November 1, 2019.

**1.38**   Plan means this Plan, and as it may be modified or amended, as is applicable.

**1.39**   Priority Claim shall mean a Claim, other than an Administrative Claim or Tax Claim, as to which priority in payment is asserted pursuant to Section 507(a) of the Code.

**1.40**   Priority Tax Claim shall mean a Tax Claim (as defined below), other than an Administrative Claim or a Secured Claim, as to which priority in payment is allowed pursuant to Section 507(a)(8) of the Code.

**1.41**   Pro Rata shall mean the same proportion that a Claim in a particular class bears to the aggregate amount of all allowed Claims in such class.

**1.42** Sabra HealthCare or Sabra shall mean Sabra HealthCare Pennsylvania, Inc., the landlord of the Clara Burke and Warrington Facilities, and a secured creditor of Clara Burke and Warrington.

**1.43** St. Agnes MOB, LLC shall mean the former landlord of the South Philadelphia Facility.

**1.44** Tax Claim shall mean a Claim, other than an Administrative Claim or a secured Claim, as to which priority in payment is allowed pursuant to Section 507(a)(8) of the Code.

**1.45** Warrington shall mean Fox Nursing Home Corp. d/b/a Fox Subacute at Warrington, an affiliate of the Debtor, which formerly operated a skilled nursing facility in Warrington, Bucks County, Pennsylvania.

**1.46** Any term which is used in this Plan which is not defined herein, but is used in the Bankruptcy Code or found in the Bankruptcy Code, has the meaning assigned to it in the Code.

# ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

**Certain Claims and interests in this Case are divided into unclassified groups and are named as Classes for convenience only as follows:**

**2.1    Class 1.        Professional Administrative Costs.**

      **2.1.1        Class 1A**.  The expenses and Claims of administration for compensation and reimbursement of professionals in the Mechanicsburg case, as allowed by the Court, under Section 330 of the Bankruptcy Code.

      **2.1.2        Class 1B**.  The expenses and Claims of administration for compensation and reimbursement of professionals in the South Philadelphia case, as allowed by the Court, under Section 330 of the Bankruptcy Code.

**2.2    Class 2.        Administrative Claims.**

      **2.2.1   Class 2A.**  To the extent that they are allowed, all Administrative Claims and expenses of administration, other than those set forth in Class 1 or in any other Class, in the Mechanicsburg case, incurred during the administration of the proceeding, to the extent that same exist.

      **2.2.2   Class 2B.**  To the extent that they are allowed, all Administrative Claims and expenses of administration, other than those set forth in Class 1 or in any other Class, in the South Philadelphia case, incurred during the administration of the proceeding, to the extent that same exist.

**2.3     Class 3.         Priority Tax Claims**.

   **2.3.1   Class 3A**.         All Claims to the extent that such are allowed pursuant to Section 507(a)(8) of the Code, and as such Claims exist on the date of the filing of the Chapter 11 Petition in the Mechanicsburg Case, including, but not limited to any Priority Tax Claims of the United States of America, Internal Revenue Service, or any state or any local taxing authority, to the extent that any such Claim is not disputed, and are entitled to priority status under the Code.

   **2.3.2   Class 3B.**        All Claims to the extent that such are allowed pursuant to Section 507(a)(8) of the Code, and as such Claims exist on the date of the filing of the Chapter 11 Petition in the South Philadelphia Case, including, but not limited to any Priority Tax Claims of the United States of America, Internal Revenue Service, or any state or any local taxing authority, to the extent that any such Claim is not disputed, and are entitled to priority status under the Code.

   **The classified Claims and interests in this case are divided into classes as follows:**

**2.4     Class 4.         PeoplesBank**

   **2.4.1**   Pre-Petition, PeoplesBank granted a line of credit facility to the two (2) Debtors (the "Peoples Line of Credit"), Clara Burke and Warrington.  Class 4 shall consist of the allowed, secured Claim of PeoplesBank under the Peoples Line of Credit.

   **2.4.2**   As of the Petition Date, the Debtors, Clara Burke and Warrington owed PeoplesBank the sum of approximately $5,500,000.00 on the Peoples Line of Credit.  The Peoples Line of Credit is secured on all Personal Property of each of the Debtors, except for vehicles.  Such lien is subject to any purchase money security interest of any other creditors entitled to priority under applicable non-bankruptcy law, and subsequent in priority to Sabra as to the Personal

9

Property (except for Accounts Receivable, as more fully set forth in the Intercreditor Agreement), and except for Vehicles.

## 2.5   Class 5       General Unsecured Claims

**2.5.1   Class 5A**      All other Claims which are not otherwise classified herein which are Allowed Claims of Mechanicsburg, including all non-priority, unsecured Claims against Mechanicsburg, and which are not disputed or contingent and are liquidated or otherwise have an allowed Claim, as defined in the Bankruptcy Code and the Rules of Bankruptcy Procedure, shall constitute the Class 6A unsecured Claims in this case.

**2.5.2   Class 5B**      All other Claims which are not otherwise classified herein which are Allowed Claims of South Philadelphia, including all non-priority, unsecured Claims against South Philadelphia, and which are not disputed or contingent and are liquidated or otherwise have an allowed Claim, as defined in the Bankruptcy Code and the Rules of Bankruptcy Procedure, except for Class 6 Claims, shall constitute the Class 5B unsecured Claims in this case.

## 2.6   Class 6       Personal Injury Suits

**2.6.1   Class 6A**      Any Claims resulting from Personal Injury Suits from events which occurred as to Mechanicsburg are included as Class 6A Claims to be allocated to Mechanicsburg to the extent that any such Personal Injury Suit relates to the Debtor or the Facility where the events occurred that gave rise to any such Personal Injury Suit.

**2.6.2   Class 6B**      Any Claims resulting from Personal Injury Suits from events which occurred as to South Philadelphia are included as Class 6B Claims to be allocated to South Philadelphia to the extent that any such Personal Injury Suit relates to the Debtor or the Facility where the events occurred that gave rise to any such Personal Injury Suit.

10

**2.7    Class 7.        Equity Holders.**

**2.7.1**    The Mechanicsburg equity holders are James Foulke, the ninety percent (90%) holder of the equity, Joseph Murray, the five percent (5%) holder of the equity, and the Estate of Walter Dunsmore, which owns five percent (5%) of the equity, in such entity.

**2.7.2**    The South Philadelphia equity holders are James Foulke, the ninety percent (90%) holder of the equity, and Joseph Murray, the ten percent (10%) holder of the equity, in such entity.

**ARTICLE III**
**CLASSES NOT IMPAIRED OR UNCLASSIFIED**
**UNDER THE PLAN**

The following classes of Claims are not impaired or are not to be considered classified under the Plan:  Classes 1A, 1B, 1C, 1D, 2A, 2B,  3A, 3B, 6A and 6B.

**ARTICLE IV**
**TREATMENT OF UNIMPAIRED CLASSES OR UNCLASSIFIED CLAIMS**

The Claims of each of the classes listed as unimpaired or not classified in Article III, shall be paid and satisfied as follows:

**4.1    Class 1.  Professional Administrative Claims**.

All Class 1A and Class 1B Claims, as allowed by the Court, shall be paid in cash on or before the Confirmation Date of this Plan or as otherwise agreed in writing by the claimant and the Debtors.  The funds otherwise owed to professionals which the Court has not yet approved and are required by the Code to be approved by the Court shall be escrowed until necessary approvals have been obtained.  The provisions of this Section 4.1 are also subject to the terms of Article XIV of this Plan.

11

**4.2     Class 2.  Administrative Claims**.

    **4.2.1**   All Class 2A and Class 2B Claims, as allowed by the Court shall be paid as they become due in the ordinary course of business, on or before the Effective Date of this Plan, or as soon as is reasonably administratively possible thereafter depending upon the Confirmation Date and depending upon the Debtors' ability to physically write checks to pay such Claims, or as otherwise agreed by the claimant and the Debtors, whichever of these dates shall occur later.

**4.3     Class 3          Priority Tax Claims**

**4.3.1**       All priority tax Claims in Class 3A and Class 3B of all taxing authorities, shall include only pre-Petition taxes and interest accrued to the Petition Date only, and shall not include any penalties.  Such penalties do not include any trust fund tax penalties which may have been assessed against the Debtors.  All such Claims shall have credited against such Claim any post-Petition payments as to each such Claim.  All Priority Tax Claims in Class 3 shall be paid in full on or before five (5) years after the Petition Date, together with interest at the rate of 3% per annum, which interest shall begin to accrue as of the Effective Date of the Plan.  Such payments will be made on a regular monthly basis, and each such payment shall begin in the first calendar month after the Effective Date of the Plan.

**4.4     Class 6          Personal Injury Claims**

    **4.4.1**   Any Class 6A and Class 6B Claims resulting from Personal Injury Suits shall nonetheless not receive a distribution under Section 5.2 of the Plan as Class 5 unsecured creditors, but rather, any payment thereof shall be as set forth in any order in a case allowing relief from the automatic stay and shall be limited to appropriate insurance proceeds (unless any order of tax court states otherwise) subject, however, to any sums which may be payable by the Debtor as to any

12

professional liability or liability insurance deductibles or as may be negotiated between the Debtors' insurance companies, or any plaintiffs as to Personal Injury Suits.

**4.4.2** The Debtors, together with Clara Burke and Warrington, intend to set aside the sum of $500,000.00 to be held for payment of deductible amounts which may be owed by the Debtors, together with Clara Burke and Warrington, for Personal Injury Claims and the costs thereof as deductibles, to the extent either of the Debtors, Clara Burke or Warrington are liable for such deductibles. The professional liability policies provide that the Debtors are potentially liable for the first $100,000.00 of the costs of litigation and attorneys' fees and for payment of judgments or settlements.

## ARTICLE V

## TREATMENT OF IMPAIRED CLASSES

**5.1** Class 4        PeoplesBank

**5.1.1** PeoplesBank granted the Debtors and Clara Burke and Warrington one (1) loan. This loan is hereinafter the "Peoples Line of Credit," on which approximately $5,500,000.00 was owed as the Petition Date. The Peoples Line of Credit is secured on all Personal Property of each of the Debtors, including each Debtor's accounts receivable, but excluding vehicles, and subject to any purchase money security interest entitled to priority under non-bankruptcy law.

**5.1.2** During the course of the Cases, the Debtors have been making payments as to the Peoples Line of Credit. Pursuant to various Cash Collateral Orders, the Debtors and Clara Burke and Warrington initially had been paying interest only as to the Peoples Line of Credit. Starting with the Ninth Interim Cash Collateral Order, the Debtors have also been making payments of $50,000.00 per month beginning with the month of September 2020. Warrington also made a $700,000.00 payment to PeoplesBank. Such $50,000.00 per month payments and the $700,000.00

13

payment are believed to have been applied to the principal owed on the Peoples Line of Credit. The principal balance owed to PeoplesBank is approximately $3,400,000.00.

**5.1.3** As of the Effective Date, the amount owed on the Peoples Line of Credit will be calculated. This amount, which will include principal, accrued interest at the contract rate, late charges that accrued prior to the Petition Date, and any allowed costs and allowed and reasonable fees, will be determined and set as the New Peoples Secured Claim ("New Peoples Secured Claim"). No late charges that accrued after the Petition Date and prior to the Effective Date will be paid or included on the balances owed on the New Peoples Secured Claim. The New Peoples Secured Claim amount will be amortized and paid in equal monthly principal installments in the amount of Fifty Thousand Dollars ($50,000.00) each, plus interest at a floating rate equal to the Wall Street Journal prime lending rate plus one and one-half percent (1.5%) with a minimum rate of five percent (5.0%) per annum. Such payments will begin thirty (30) days after the Effective Date and shall continue on the first (1st) day of each calendar month thereafter. A late charge in the amount of five percent (5%) of the amount of the delinquent installment shall be due on any installment not paid within fifteen (15) days after the date such payment is due. All amounts then owed on the New Peoples Secured Claim will become due and payable upon the soonest to occur of: (a) the occurrence of a "Peoples Plan Default," as defined below; or(b) sixty (60) months after the Effective Date (the "Term"); If a sale of any of the assets of any Debtor, or any assets of Clara Burke or Warrington, occurs, the New Peoples Secured Claim will be paid the net proceeds in accordance with lien priorities, up to the amount then owed on the New Peoples Secured Claim. Further, in the event that either the Clara Burke or Warrington Facility closes and either Clara Burke and/or Warrington cease business, all remaining proceeds of Accounts Receivable or cash proceeds after payment of appropriate of costs of any sale or administrative expenses, shall be paid

14

to PeoplesBank to be applied to the New Peoples Secured Claim. If the New Peoples Secured Claim is not paid in full from the sale of the Assets of a particular Debtor, or from a sale of any assets of Clara Burke or Warrington, then the remaining amount owed on the New Peoples Secured Claim will be amortized over the remaining months of the Term. After the New Peoples Secured Claim becomes due and payable in full, interest shall accrue on the principal balance outstanding thereunder at a floating rate equal to the Wall Street Journal prime lending rate plus two and one-half percent (2.50%) per annum. The Debtors may pay the New Peoples Secured Claim prior to maturity without payment of any prepayment fee or premium.

    **5.1.4** For such time as any amount is outstanding under the New Peoples Secured Claim, the Debtors shall maintain "Eligible Accounts Receivable," as defined in the Revolving Line of Credit Loan Agreement made as of April 20, 2018 between the Debtors and PeoplesBank (the "Loan Agreement"), and cash on deposit in concentration accounts maintained with PeoplesBank such that the sum of eighty percent (80%) of the Eligible Accounts Receivable plus ninety percent (90%) of cash on deposit in such accounts is at all times equal to or greater than 1.8 times the principal balance outstanding under the New Peoples Secured Claim (the "Required Collateral Level"). Beginning on the date on which the first payment is due on the New Peoples Secured Claim and continuing on the first (1st) day of each calendar month thereafter for so long as any amount is outstanding under the New Peoples Secured Claim, the Debtors shall provide to PeoplesBank: (a) a Borrowing Base Certificate reflecting their Eligible Accounts Receivable as of the fifteenth (15th) day of the immediately preceding month; (b) an aging of each of the Debtors' total outstanding accounts receivable as that date; (c) an aging report of each Debtor's total outstanding post-petition payables as of that date; and (d) a schedule of cash currently held by each of the Debtors, listed by Debtor and by account. In addition to the installments of principal and

interest provided for in Section 5.1.3 of the Plan, the Debtors shall pay PeoplesBank a monthly monitoring fee in the amount of Five Hundred Dollars ($500.00).

**5.1.5**  Each of the following shall constitute a "Peoples Plan Default:" (a) the failure of the Debtors to make any payment on the New Peoples Secured Claim required by Section 5.1.3 of the Plan when and as due, which failure continues for more than ten (10) business days after written notice to the Debtors from PeoplesBank; (b) the failure of the Debtors to maintain the Required Collateral Level for two consecutive months; (c) the failure of the Debtors to provide any report required by Section 5.1.4 of the Plan to PeoplesBank when and as due, which failure continues for more than five (5) business days after written notice to the Debtors from PeoplesBank; or (d) the occurrence of an "Event of Default" under any of Sections 7.02 through 7.12 of the Loan Agreement, provided, however, that the filing of the Chapter 11 Case shall not constitute a Peoples Plan Default.  Nonetheless, all defaults under the Loan Agreement existing as of the Effective Date are waived.

**5.1.6**  PeoplesBank will retain its security interest in the Debtors' Personal Property as such lien exists pre-Petition under the loan agreement between the Debtors and PeoplesBank, and as modified in the various Cash Collateral Orders. Such retention of a security interest in the Debtors' Personal Property shall continue until such time as the New Peoples Secured Claim is paid in full.  Upon the New Peoples Secured Claim being paid in full, the security interest in the Debtors' Personal Property shall be released by PeoplesBank and shall be deemed satisfied without further Order of Court or further recordation of any document.

16

**5.2    Class 5          General Unsecured Creditors**

**5.2.1**    Class 5A and Class 5B shall include all other Claim holders of the Debtors who are not otherwise classified under the Plan, including all general unsecured creditors, except for Class 6, Personal Injury Claims.

**5.2.2**    Beginning six (6) months after the Effective Date, the General Unsecured Creditors shall be paid twenty percent (20%) of each allowed Class 5 Claim, payable in three (3) equal annual installments of 6.67%) each.  Each of the payments to Classes 5A and 5B shall be made by the appropriate Debtor which owes the Claim.

**5.3    Class 7          Equity Holder**

**5.3.1**    Each of the Debtors' equity is held as follows:

>           Mechanicsburg:  James Foulke 90% and Joseph Murray 10%

>           South Philadelphia:  James Foulke 90% and Joseph Murray 10%

**5.3.2**    Each equity holder will continue to hold the equity subsequent to the Effective Date of the Plan in the same percentage as exists pre-Petition, provided, however, that as of the Effective Date, the Debtors retain the right to cancel the equity and issue new equity in the same amount of percentages as exist pre-Petition.

**ARTICLE VI**
**MEANS FOR EXECUTION OF THE PLAN**

**6.1**    Operations of the Debtor

The Debtors intend to continue to operate each of the Facilities in its skilled nursing business.  Revenue will continue to be generated by billing Medicare, Medicaid and private insurers.  The Debtors believe they will generate sufficient income from its operations to provide for sufficient cash to fund the Plan of Reorganization.

17

**6.2     Sale of Assets**

The Debtors retain the right to sell any of their Assets.  The Debtors are not required to sell any Assets.

**ARTICLE VII**
**EXECUTORY CONTRACTS**

**7.1**     Mechanicsburg Contracts and Leases.

**7.1.1   Real Estate Lease**

The real property lease by Mechanicsburg of its Facility from FSA Realty Associates, LLP, is assumed as of the Effective Date, to the extent not previously assumed.

**7.1.2   Delcrest Medical Services, LLC**

Mechanicsburg's lease with Delcrest Medical Services, LLC, for room furnishings has been paid in full.  No assumption or rejection is necessary.

**7.1.3   Hewlett Packard Financial Services**

Mechanicsburg's lease with Hewlett Packard Financial Services concerning computer equipment, no longer exists.  No assumption or rejection is necessary.

**7.1.4   Marlin Business Bank**

The lease of Mechanicsburg with Marlin Business Bank for resident room furniture is assumed as of the Effective Date of the Plan.

**7.1.5   PointClickCare**

Mechanicsburg's lease with PointClickCare for computer software is assumed as of the Effective Date of the Plan.

18

### 7.1.6   Great American

Mechanicsburg has two (2) leases with Great American Financial Services for Equipment.  Both leases are assumed as of the Effective Date of the Plan.

## 7.2   South Philadelphia Contracts and Leases.

### 7.2.1   Real Estate Lease

The real estate lease by South Philadelphia of its Facility from AC HSS, is assumed as of the Effective Date, to the extent not previously assumed.  A lease assumption and amendment was approved by an Order of the Court dated August 24, 2020, in the South Philadelphia Case.

### 7.2.2   Delcrest Medical Services, LLC

South Philadelphia's lease with Delcrest Medical Services, LLC, for room furnishings has been paid in full.  No assumption or rejection is necessary.

### 7.2.3   Hewlett Packard Financial Services

South Philadelphia's lease with Hewlett Packard Financial Services concerning computer equipment, has been paid in full.  No assumption or rejection is necessary.

### 7.2.4   Pitney Bowes Global Financial Serv.

The lease by South Philadelphia with Pitney Bowes Global Financial Serv. for a postage meter, is assumed as of the Effective Date of the Plan.

### 7.2.5   PointClickCare

South Philadelphia's lease with PointClickCare for computer software is assumed as of the Effective Date of the Plan.

19

**7.3     Management Agreement**

The Management Agreement between each of the Debtors and Fox Subacute Management is assumed as of the Effective Date of the Plan.  Any Claim of Fox Subacute Management against the Debtor or the Debtors claims against Fox Subacute Management resulting from underpayment of management fees or reimbursement for health insurance claims as of the Effective Date is expressly waived.

**7.4     Insurance Contracts for All Debtors**

Any contract for insurance coverage as to any of the Debtors' Assets or as to any Debtors' business operations, or employees as may exist and as may be in effect as of the Confirmation Date will be assumed as of the Effective Date of the Plan, until terminated under the terms of any such insurance agreement.

**7.5     Provider Agreements and Governmental Agreements**

Any provider agreements with a medical insurance provider, the United States Department of Health and Human Services for Medicare, or with any other governmental agency, the state or managed care company for reimbursement of medical costs or also to governmental licensing, certificates, bed approvals or similar agreements, are assumed as of the Effective Date of the Plan.

**7.6     Other Contracts for All Debtors**

Any leases or agreements for cell phone use, or any other licenses or utility agreements are assumed under the Plan as of the Effective Date.  Any other contracts or leases not specifically set forth in this Article VII, shall be rejected as of the Effective Date of the Plan.

20

**7.7    Arrearages**

Any lessor, to any of the Debtors, or contract party which believes it may have a claim for arrearages for any lease or contract assumed hereunder must provide the amount of such arrearages to the Debtors within twenty (20) days after Confirmation of the Plan.

**7.8    Rejection Claim**

Any Claim based upon a rejected contract or lease shall be required to be filed on or before twenty (20) days subsequent to the Confirmation Date of the Plan or such Claim shall be deemed barred.  Except as otherwise set forth in this Plan, all such Claims shall be under and pursuant to and subject to the provisions of Section 365 of the Code.

**ARTICLE VIII**
**PROCEDURE FOR RESOLVING DISPUTED CLAIMS**

**8.1    Objections to Claims.**

The Debtors reserve the right to object to any Claims as filed with the Court.  The time period for the Objections to Claims may be set by the Court at the Confirmation Hearing or at such other date; provided, however, that no objection to the Peoples Line of Credit shall be filed after the Confirmation Hearing, with respect to such Claim as filed prior to the Confirmation Hearing.  Any Objections shall be served upon the holder of the Claim to which an Objection is made.

**8.2    Prosecution of Pending Objections to Claims**.

Objections to Claims that are pending as of the Confirmation Date, or were made after the Confirmation Date, shall be prosecuted after the Confirmation Date.  The

objecting party shall have the discretion to litigate to judgment, settle or withdraw Objections to disputed Claims.

**8.3    Payment of Disputed Claims**.

Except as may be otherwise agreed with respect to any disputed Claim, no payments shall be paid with respect to all or any portion of a disputed Claim unless and until all Objections to such disputed Claim have been determined by a final Order.  Payments and distributions to each holder of a disputed Claim, to the extent that it ultimately becomes an allowed Claim shall be made in accordance with the provisions of this Plan.  Upon resolution of the disputed Claim, final distribution, pro rata, shall occur.  The Debtors reserves the right to propose a payment schedule as to any such disputed Claim which differs from that of other unsecured Claim holders.

**8.4    Payments to Unsecured Creditors**.

Payments to Unsecured Creditors shall occur through the Debtors or through the Debtors' bankruptcy attorneys, Cunningham, Chernicoff & Warshawsky, P.C.   If Cunningham, Chernicoff & Warshawsky, P.C. conducts any disbursements, such  firm shall be permitted to impose a reasonable charge upon the distribution to unsecured creditors for such services.

**ARTICLE IX**
**RETENTION AND ENFORCEMENT OF CLAIMS**
**BELONGING TO THE ESTATE**

**9.1**

**All preference Claims pursuant to Section 547 of the Code, all fraudulent transfer Claims pursuant to Section 548 of the Code, all Claims relating to post-**

22

**Petition transactions under Section 549 of the Code, all Claims recoverable under Section 550 of the Code, all Claims against a third party on account of an indebtedness, and any other Claims owed to or in favor of the Debtors, are hereby preserved and retained for enforcement subsequent to the Effective Date of the Plan by the Debtors, or the Committee in the event any such Claims are assigned to the Committee.** Notwithstanding the foregoing, no claims under Section 547, 548, 549, or 550 of the Code shall be asserted against PeoplesBank after the Confirmation Hearing if the Plan is confirmed and the Effective Date occurs.

**ARTICLE X**
**CONFIRMATION REQUEST**

**10.1**  Impaired Classes to Vote.

Only Classes of creditors and interest holders that are impaired shall be entitled to vote as a Class to accept or reject the Plan. Those Classes of creditors which are not impaired or are not classified, that is Classes 1A, 1B, 2A, 2B 3A, 3B, 6A and 6B, shall not be permitted to vote on the Plan.

**10.2**  **Acceptance by a Class of Creditors**.

A Class of creditors shall have voted to accept the Plan if the Plan is accepted by creditors of such Class that holds at least two-thirds (2/3) of the aggregate dollar amount, and more than one- half (½) in number of the allowed Claims of creditors of such Class that vote to accept or reject the Plan.

Case 1:19-bk-04714-HWV   Doc 764   Filed 08/19/22   Entered 08/19/22 15:52:07   Desc
Main Document    Page 23 of 36

**10.3    Confirmation Request**.

If one or more impaired Classes of Claims or interests fails to accept the Plan under Section 1126 of the Code and all of the applicable requirements of Section 1129(a) of the Code have been satisfied other than Section 1129(a)(8) of the Code, the Debtors requests that the Court confirm the Plan pursuant to the provisions of Section 1129(b) of the Code as it applies to Claims and Interests. In the event that any of classes 5A or 5B, each of which is a class of unsecured Claim holders, has not accepted the Plan in the requisite numbers which are necessary and required under Section 1126 of the Code, then as part of the confirmation process for that particular Debtor and in a Motion for Confirmation that particular Debtor may make available to other parties the right to bid for the equity of the Debtor consisting of the ownership of that particular Debtor, provided that any such bid is on certain terms and conditions to be further determined. Included in such terms and conditions is the requirement that any obligation or guaranty by the current equity holders in any of the Debtors' cases, that is Fox Subacute Management, James M. Foulke, Joseph F. Murray, or Ellen Foulke, of any Debtors' obligations to creditors be removed or replaced by the new obligors or guarantors acceptable to any such creditor. Any such acquisition of the equity will also have the requirement that any payment by such acquiring party indemnify the particular Debtor as to the secured debt. The owners of any of the Debtors may also place new value into that particular Debtor's estate as may be necessary, in the event that a class of unsecured Claims does not accept the Plan as required by Section 1126 of the Code. These requests will be required by the procedure under the Confirmation

24

Process in the event that the requisite number of votes under Section 1126 of the Code in favor of the Plan does not occur.

## ARTICLE XI
## DISCHARGE

**11.1**

 **11.1.1** The entry of an Order of the Bankruptcy Court confirming this Plan acts as a discharge, effective as of the Effective Date, of any and all debts of each Debtor, pursuant to Section 1141 of the Bankruptcy Code, including, but not limited to all principal and interest of discharged Claims. Provided that the Effective Date occurs, all creditors are limited, pursuant to Section 1141 of the Code, and pursuant to this Plan, to the remedies provided by this Plan and the Code for all Claim holders and equity holders, including contingent and disputed Claims which are not otherwise allowed Claims, and including any lease or executory contract rejection Claims.

## ARTICLE XII
## INJUNCTION

**12.1**

 **All creditors of the Debtors are limited, pursuant to Section 1141 of the Code, to the treatment provided by this Plan and the Code for all Claim holders and equity holders, including contingent and disputed Claims which are not otherwise Allowed Claims. Further, as of the Effective Date, this Plan shall act as an injunction against and shall enjoin all holders of a debt held by a Claim holder, whether or not (i) a proof of Claim based on such debt is filed or deemed filed under Section 501 of the Code; (ii) such Claim is allowed under Section 502 of the Code; or (iii) the holder of such**

25

Claim has accepted the Plan; from seeking payment of such Claim from the Debtors, other than as set forth in this Plan. The remedy for the breach of a provision of this Plan, shall be an action in this Bankruptcy Court. If a Peoples Plan Default occurs as to any required payment of the New Peoples Secured Claim, following the notice without a cure, set forth in Section 5.1.5, PeoplesBank may pursue the rights and remedies available to it under non-bankruptcy law. The stay shall remain in effect as to any action against the Debtors through the Effective Date, when it is replaced by the injunction in this Section and Sections 524(a) and 1141 of the Code; and Claim holders are limited to the remedies set forth herein, under the Code and under applicable law. In the event that any Claim holder believes that a debt has not been paid as required under the Plan, such Claim holder is limited to remedies as provided under the Bankruptcy Code and applicable law.

Further, in the event of non-payment under this Plan other than non-payment of the New Peoples Secured Claim, no default may occur until after the expiration of twenty (20) days after receipt of notice of such non-payment has been received by the Debtors and its counsel, Cunningham & Chernicoff, P.C., Debtors' counsel, without cure of the non-payment. Such notice is to be forwarded to Debtors' counsel at the address set forth at the end of this Plan.

## ARTICLE XIII
## REVESTING

**13.1**

On the date Effective Date, the Debtors shall be revested with all of their property then existing, free and clear of all Claims, liens and encumbrances arising prior to the date of the entry of the Confirmation Order, except as provided in Article V of the Plan. Under Article V of the Plan, the PeoplesBank lien on each Debtors' Personal Property, except for vehicles, shall be retained by such Claim holder, as set forth in Article V of the Plan.

## ARTICLE XIV
## PROFESSIONALS AND THE COMMITTEE

**14.1**

The Class 1 professional administrative Claim holders are believed to be Cunningham & Chernicoff, P.C., counsel to the Debtors, Isdaner & Company, LLC, accountants to the Debtors, Three Twenty-One Capital Partners, LLC, the investment banker to the Debtors and Kennedy P.C., Post & Schell and German Gallagher & Murtagh, special counsel to the Debtors and Flaster Greenberg, P.C., counsel to the Committee, and Getzler, Henrich & Associates, LLC, financial advisor to the Committee.

**14.2**

All allowed costs of administration for professionals shall be paid as set forth in Section 4.1 of the Plan. All professionals employed by the Debtors shall continue to be employed and to be entitled to compensation from the estate for their services after the Effective Date on a regular ongoing basis. To the extent that any approvals are necessary which have not occurred as to any professional services, and such approval has not yet

been entered by the Court, then an amount is to be escrowed and set aside on the Confirmation Date. To the extent that any services have been performed by professionals subsequent to the Confirmation Date of this Plan or any modification of this Plan, or the Debtors employs new professionals Post-Confirmation, such services and payments will not be subject to the review and approval of the Court. All reasonable fees for professionals shall be paid in the ordinary course by the Debtors.

**14.3**

**Upon the Effective Date, the Creditors' Committee shall dissolve as to its existence. The retention of all professionals retained by the Committee shall also cease as of the Effective Date.**

**ARTICLE XV**
**MISCELLANEOUS**

**15.1**

The Debtors have filed a Motion to fix a Bar Date as to Claims. Notice of such Bar Date has been provided to creditors. The Bar Date is February 27, 2020.

**15.2**

The "Effective Date of the Plan" will be the first day of the calendar month following sixty (60) days after the Confirmation Order becomes final, and shall not have been reversed, stayed, or adversely modified or amended. Such date shall be subject to the right of the Debtors to request that the Court extend the Effective Date. The Debtors may request that the Effective Date be extended in the event that a standard termination of the Pension Plan has occurred.

28

**15.3**

Upon the Confirmation Order becoming a Final Order, the Debtors, their creditors and Claim holders, and equity interest holders shall be legally bound by the Plan, whether or not they have accepted the Plan.

**15.4**

The transfer of any assets including any real estate, if any, during the pendency of this case, or after Confirmation, shall constitute a transfer under this Plan within the purview of Code Section 1146(c) and shall not be subject to transfer, stamp or similar taxes under any law.

**15.5**

All quarterly fees due and owing to the United States Trustee under 28 U.S.C. §1930 for the period of time up to Confirmation shall be paid pursuant to Article IV, Section 4.2 of the Plan when due. All quarterly fees for the U.S. Trustee for the period after confirmation of the Plan shall be paid pursuant to Section 15.6 below and in the ordinary course.

The Debtors each may seek as soon as possible, upon proper Motion, for the closing of the case in accordance with the provisions of the Bankruptcy Code and dependent upon the activity in the case and as to the Plan. Until such time as the Court, upon Motion, orders the closing of the case, the Debtors shall be subject to such provisions as are relevant as to the payment of quarterly fees to the Office of the U.S. Trustee.

**15.6**

Any and all Claims which are listed in the Bankruptcy Schedules as disputed, contingent or unliquidated, and for which no proper Proof of Claim has been filed prior to a claims bar date, shall be disallowed, and shall not be entitled to vote on the Plan, including any rejection Claims on account of any leases or executory contracts. If there is an objection pending as to a Claim when voting is to occur, such Claim holder shall not have its Claim considered for voting purposes until such Claim is allowed by the Court or the Court has entered an Order estimating such holder's claim for voting purposes pursuant to Section 502(c) of the Code and Rule of Bankruptcy Procedure 3018(a). Further, the Notice and Order approving the Disclosure Statement may contain therein a notice providing for a bar date for the filing of a proper Proof of Claim.

**15.7**

Any Class that is unimpaired or not classified shall not vote on the Plan and the Debtors, at their option, shall not be required to send a Disclosure Statement and Plan to Claim holders in such Class.

**15.8**

Any amount set forth by a Claim holder on any ballot solicited in this case and voted by a Claim holder shall not be binding upon the Debtors, but rather, the amounts scheduled by the Debtors, if not disputed, contingent or unliquidated, or as set forth in a Proof of Claim filed by a Claim holder, as allowed by the Court, shall control the amount of a creditor's Claim for purposes of voting on the Plan, or distribution under the Plan. Further, in the event that a creditor sets forth an incorrect Class for its Claim on any ballot voted on

30

this Plan, then the Debtors reserve the right to correct such ballot to set forth the proper Class.  Except as previously resolved by a Final Order, the Debtors reserve the right to object to any and all Claims filed in this Case, including any late filed Claims, which Claims are filed after the bar date established by the Court.  Unless a Court Order provides otherwise, late filed Claims will not share in any distribution under the Plan.

**15.9**

Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania.

**15.10**

In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence, subject, however, to any Order previously entered in this Case.

**15.11**

The automatic stay of 11 U.S.C. §362 shall remain in effect as under Section 12.1 of the Plan and subject to the injunction set forth in Section 12.1 of the Plan, and under the Bankruptcy Code.

**15.12**

After the Effective Date, the Debtors may, and so long as it does not materially and adversely affect the interests of any claimant, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order Confirming the Plan, and such matters as

31

may be necessary to carry out the purposes and effect of the Plan and without leave of the Court, except as required by the Plan or the Code.

**15.13**

After the Effective Date, the Debtors may take such actions as necessary to effectuate the Plan without leave of Court, except as required by the Plan or the Code.

**15.14**

**Pursuant to Sections 105, 524, or 1141 of the Bankruptcy Code, upon the Effective Date, Debtors' counsel and professionals shall be deemed released and held harmless in connection with any Claims, charges or liabilities arising directly or indirectly in connection with their service during the Chapter 11 cases, or the representation of the Debtors, except to the extent such liability arose out of fraud, willful or reckless conduct.**

**15.15**

**The Debtors and their employees or agents (including the professionals and any other professionals retained by such persons) shall have no liability to any holder of a Claim or equity interest for any act or omission in connection with, or arising out of the formulation of the Plan, the pursuit of approval of the Disclosure Statement for the Plan, or the solicitation of votes for or confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing contained in this Section shall be deemed to**

cause a release of any personal guarantee of any party, as to any of the Claims against the Debtors, to the extent that such exist.  The Release contained herein is intended to be only with respect to the Plan and Disclosure Statement process.

**15.16**

For purposes of payments under the Plan to all Claim holders, the Disbursing Agent shall be the Debtors or their counsel, with respect to unsecured creditors.  If counsel to the Debtors is the disbursing agent, it may charge a reasonable fee for disbursement.  The Debtors will pay secured creditors.

**15.17**

Any distribution under the Plan that is returned as undeliverable shall be retained by the Debtors after any applicable period of time for retention has expired.

## ARTICLE XVI
## PRIOR ORDERS OF THE BANKRUPTCY COURT

**16.1**

Prior Orders of the Bankruptcy Court in the Chapter 11 case are incorporated in this Plan and made a part hereof, to the extent not inconsistent herewith.

## ARTICLE XVII
## MODIFICATION OF THE PLAN

**17.1**   Before Confirmation.

At any time prior to Confirmation, the Debtors may propose amendments or modifications of the Plan at any time, but such modification may not cause the Plan, as modified, to fail to meet  the requirements of Sections 1122 and 1123 of the Bankruptcy

33

Code.  If the Debtors file a modification or amendment with the Bankruptcy Court, the Plan as modified or amended shall become the Plan.

**17.2    After Confirmation**.

At any time after Confirmation, the Debtors may, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.  Further, the Debtors may, with approval of the Court, after notice and hearing, modify or amend the Plan to the extent it may materially or adversely affect creditors, and if the Court confirms such Plan as modified or amended, such modified or amended Plan shall become the Plan.

**ARTICLE XVIII**
**JURISDICTION OF THE COURT**

**18.1**

The United States Bankruptcy Court for the Middle District of Pennsylvania will retain jurisdiction until this Plan has been fully consummated, or as otherwise Ordered by the Court, notwithstanding the administrative closing of the Chapter 11 Case, including, but not limited to the following purposes:

      **a.**    The classification of the Claim of any creditor and the re-examination of Claims which have been allowed in this case, and the determination of such objections as may be filed to creditors' Claims including as to the amount of any Claim or Administrative Claim.  The failure by the Debtors to object to, or to examine any Claim for the purposes of voting on any plan, shall not be deemed to be a waiver of the Debtors' right to object to, or re-examine the Claim in whole or in part.

      **b.**    Determination of all questions and disputes regarding title to the assets of the Debtors' estate, and determination of all causes of action, controversies, disputes, conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtors and any other party, including, but not limited to any right of the Debtors to

34

recover assets, including accounts receivable, preferences and fraudulent conveyances, pursuant to the provisions of the Bankruptcy Code.

**c.** The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

**d.** The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and pursuant to this Plan.

**e.** To enforce and interpret the terms and conditions of this Plan.

**f.** To approve, if necessary, the sale of any assets of the Debtors upon such terms and conditions to be set forth in the proposed sale.

**g.** To enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtors and to impose such limitations, restrictions, terms, and conditions of such title, rights, and powers as this Court may deem necessary, and to enforce the terms and provisions of this Plan.

**h.** To determine any and all applications, motions, adversary proceedings and contested matters, whether pending before the Court on the Effective Date, or filed or instituted after the Effective Date, including, without limitation, proceedings to recover voidable transfers under the Code or other applicable law.

Debtor:

**FOX SUBACUTE AT MECHANICSBURG, LLC**

Date:    08/17/2022                          James M. Foulke, President

**FOX SUBACUTE AT SOUTH PHILADELPHIA, LLC**

Date:                                       James M. Foulke, President

**Debtors' Counsel:**

Robert E. Chernicoff, Esquire
CUNNINGHAM, CHERNICOFF & WARSHAWSKY, P.C.
2320 North Second Street
P.O. Box 60457
Harrisburg, PA  17106-0457
(717) 238-6570